THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ANDREW J. KIEFER, ALBERT SCHLAFER, JOHN A. KIEFER, JOHN WITHERS, and WILLIAM BOWE, Defendants.

County Court, Queens County, January 5, 1940.

*Charles P. Sullivan, District Attorney* [*Joseph V. Loscalzo, Assistant District Attorney,* of counsel], for the plaintiff.

*I. T. Flatto,* for the defendants.

Downs, J.   This is a motion for an inspection of the grand jury minutes herein and in the alternative to dismiss the indictment against each of the defendants, and for such other and further relief as to the court may seem just and proper.

The indictment herein accuses each of the defendants herein in the first count of the crime of violation of the provisions of section 1376 of the Penal Law, alleging that the defendants acting in concert on or about November 11, 1938, offered for sale or distribution personal property, or an interest therein, to be determined by lot or chance, dependent upon the drawing of a lottery within the State of New York, and in the second count accusing each of the defendants of the crime of violation of the provisions of section 1376 of the Penal Law in that the defendants acting in concert on or about November 11, 1938, sold, furnished, or procured, or caused to be sold, furnished, or procured a chance, a share, or an interest, or a ticket, or other evidence of such a chance, share, or interest in property offered for sale or distribution, to be determined by lot or chance, dependent upon the drawing of a lottery within the State of New York, in violation of the provisions of article 130 of the Penal Law of the State of New York.

The defendants herein have been indicted pursuant to an order of the Supreme Court, in each instance accusing them of the commission of the crimes alleged in the indictment as a misdemeanor.

An examination of the minutes herein indicates that certain

officers of the police department of the city of New York attended a bingo on or about the 11th day of November, 1938, which was conducted at 343 St. Nicholas avenue, in the county of Queens, which is conducted also as a sporting arena known as the Ridgewood Grove.

The testimony indicates that defendant Albert Schlafer acted as master of ceremonies, that defendant John A. Kiefer acted as treasurer and paid off certain successful participants in the game of bingo in cash or by slips, and that the defendant Andrew J. Kiefer acted as manager, according to his own admission.

Andrew J. Kiefer, one of the defendants, stated to the officers that defendant Withers acted as a ticket seller in the outside booth and defendant Bowe received two dollars for turning a wheel. There is no direct proof in the minutes that either of these two was present that night. The only proof is hearsay of this fact from an alleged accomplice, and at this point without further review the court hereby determines that the indictment against defendant John Withers and defendant William Bowe does not contain sufficient legal evidence to justify finding the same, and, therefore, grants the motion to dismiss the indictment as to those two defendants and exonerates their bail.

The court will, therefore, continue this discussion and decision with reference to the other three defendants, namely, Andrew J. Kiefer, John A. Kiefer and Albert Schlafer.

The evidence discloses that the officers entered this arena, having paid an admission fee of twenty-five cents. After entering the place, bingo cards or bingo forms were delivered to the officers by some one unidentified. It appears that in the course of the evening there were two master prizes of $200 each, which could be won by one contestant or would be divided in the event there were sufficient winners, and that throughout the evening the games were continued by awarding certain articles of merchandise which were designated as prizes to be contested for, and represented the consideration for the sale of certain tickets to participate in the game of bingo, and in these instances an equivalent value of cash would be awarded in the event the winner did not desire the property prize.

The same course of procedure was followed throughout the entire night, the defendant Schlafer acting as announcer, master of ceremonies, and treasurer, the defendant Andrew J. Kiefer acting as manager, and the defendant John A. Kiefer participating by paying off certain sums of cash as well as delivering personal property.

The indictment, therefore, alleges that this course of conduct constituted a lottery in violation of the Constitution of the State of New York as well as the sections of the Penal Law heretofore cited in a description of the indictment found herein.

Section 9 of article 1 of our State Constitution provides as follows: " Nor shall any lottery or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling hereafter be authorized or allowed within this State; and the Legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section."

Article 130 of our Penal Law contains all the provisions and regulations and penalties, as well as the definitions of lotteries, and any offense or offenses in connection therewith.

Section 1376, which is the section specifically alleged to be violated herein, reads as follows: " A person who offers for sale or distribution, in any way, real or personal property, or any interest therein, to be determined by lot or chance, dependent upon the drawing of a lottery within or without this State, or who sells, furnishes, or procures, or causes to be sold, furnished, or procured, in any manner, a chance or share, or any interest in property offered for sale or distribution, in violation of this article, or a ticket or other evidence of such a chance, share, or interest, is guilty of a misdemeanor."

Section 1370 defines a lottery as follows: " A ' lottery ' is a scheme for the distribution of property by chance, among persons who have paid or agreed to pay a valuable consideration for the chance, whether called a lottery, raffle, or gift enterprise or by some other name."

This court holds there is sufficient legal evidence to justify the finding of the indictment herein against defendants Andrew J. Kiefer, John A. Kiefer and Albert Schlafer. It clearly indicates that at this particular time and place a scheme for the distribution of property by chance among persons who had paid a valuable consideration for the chance had occurred from time to time throughout the night, and it is immaterial according to our law whether we call this a lottery, raffle, or a gift enterprise, or by some other name.

It appears that the three defendants above named participated in offering for sale or distribution certain personal property or an interest therein, to be determined by lot or chance, dependent upon the drawing of a lottery within this State, and that they also co-operated each with the other in selling and furnishing, and procuring and causing to be sold, furnished or procured by various means and in different manners a chance, a share, or an interest in property offered for distribution.

The evidence discloses that at this particular time and place an enterprise, or a pastime known as bingo was conducted for the benefit of the Society for the Prevention of Cruelty to Children in the County of Queens, and the evidence further discloses, given by the president of that society, that it did benefit and receive certain

proceeds from the conduct of this bingo on this particular night, and that the money was necessary for the proper conduct of that society, which devotes itself to the welfare of children.

It is evident that the cause was a worthy one, appears to have been conducted honestly, and that the operators thereof received some compensation for their work throughout the night. It must immediately be borne in mind that the worthiness of the cause does not excuse a violation of the law.

It appears that on this evening between 1,000 and 1,500 people, apparently decent residents of our county, participated in a pastime from which they derived pleasure, as millions of others have enjoyed this similar pleasure throughout the year in our State, city and county. They also experienced the thrills of anticipation as to whether or not they would be lucky enough to have their number drawn whereby they might win some little prize. All of this was innocent. None of it appears to have been harmful to any partici-. pant, and does not appear to have deprived anybody of any of the necessities of life. A pleasant evening was enjoyed for twenty-five cents, or slightly more.

This same game has been played in many places and at various times throughout our county as well as elsewhere. The playing of this game did not disturb anybody or harm anybody, even if they were people of modest means, or what some wish to characterize as poor people. It appears to this court that they had a right to enjoy a pleasant evening and this court is of the opinion they derived more real fun and pleasure and benefit from the game than they would have during a similar period of time observing a nude show accompanied by suggestive dialogue.

In contemplating this motion, many thoughts have gone through my mind, and the whole picture of our present lottery law suggests itself as one of stupidity and hypocrisy. I listened to the arguments in the Constitutional Convention concerning gambling and am convinced our attitude is artificial in connection with certain forms of innocent gambling, which can never be obviated because it is natural for most human beings to take a chance on something at some time or another, whether it be taking a chance on a turkey during the holidays, or guessing the number of beans in a jar, or some other form of participation in a lottery, the result of which depends solely upon chance and not upon the skill of the player.

I have been mindful of the fact that bingos have been conducted by our churches of practically all denominations, by our various veterans' organizations, by our great fraternal organizations, and all have been for the purpose of helping somebody else in need of help, irrespective of the kind and nature thereof.

In the present state of our law I believe our district attorney may issue an informative proclamation to all the people of Queens county that in every instance where a bingo is conducted those conducting the same are violating the law and may be sooner or later stigmatized as criminals. I hope our legislators will give to the people of our State an opportunity to indicate whether or not they desire to be permitted under proper sensible regulations to have bingo games, or other games out of which they derive some innocent pleasure. I hope the time will not come when it will' become necessary to stigmatize the representatives of our respective churches, fraternal organizations, welfare and veterans' organizations as criminals before we have such legislation presented to us for our acceptance or rejection.

Upon the people of our State voting " yes " to an amendment of our Constitution permitting bingo and other innocent games to be played under regulation, I can foresee the Madison Square Garden Bowl in Queens county crowded with 60,000 people or more, once in the spring and again in the fall, participating in a monster bingo, the great proceeds of which could be beneficially used in providing iron lungs, oxygen tents and modern surgical equipment to the hospitals of our county, so that their patients could obtain surcease from their sufferings.

Personally, I have never seen a game of bingo or participated in one, but that is no reason why those who like it should be deprived of it so far as I am concerned. Are not we inconsistent when we attempt to characterize as criminals people who participate in the operation of a game from which millions of people derive pleasure at a very limited expenditure of money, and on the contrary will permit them restrained gambling on the result of horse races if we confine ourselves to attendance at the races and pay two dollars for the opportunity to gamble on the result? And all of this is to be done with a view to improving the breed of the thoroughbred and to provide the payment of some tax which has been greatly exaggerated to our State. For a few cents people can enjoy a game of bingo for many, many minutes, while for two dollars they can enjoy a horse race which might last approximately a minute, more or less.

And again, is not it most astounding to contemplate that the jurors who will be called upon to pass judgment upon their peers and determine whether they shall be criminals or not are themselves sitting as jurors as the result of the drawing of their names from a receptacle containing many thousands in the office of the jurors' division, while the same is observed by a sheriff of our county and a county judge. And again, the very jurors that will pass judgment,

and who are drawn for the part of this court where this case will be tried, in all solemnity will have their names drawn from a box in the court room and their selection will be dependent upon chance without any element of skill being involved, and a consideration of the appearance of these jurors in the court room shall be the fact that they are intelligent men and women, and citizens of our great United States who possess some personal property.

Does not it present a stupid, hypocritical picture that twelve men and women drawn by lot and chance themselves shall determine whether or not these three defendants shall be stigmatized the rest of their lives as criminals because they participated as misdemeanants in conducting a game of bingo? I could not refrain from commenting collaterally in this case in rendering my opinion because I could not remain unmindful of the various conditions I have heretofore discussed. As an individual I consider the whole process one of innocent pastime enjoyed by people who seek an element of chance. As a judge I must find from the testimony presented that there is sufficient legal evidence before the grand jury to indicate that our Constitution has been violated, and that our penal statutes have been offended by the three defendants retained herein.

Therefore, as to defendants Andrew J. Kiefer, John A. Kiefer and Albert Schlafer the motion herein is denied. The motion herein as to defendants John Withers and William Bowe is granted, and as to Withers and Bowe the indictment is dismissed and their bail exonerated.

Enter order.